**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LARRY ROMSTED, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 12-5588 (MAS) (LHG) |
| | : | |
| RUTGERS THE STATE UNIVERSITY | : | **MEMORANDUM OPINION** |
| OF NEW JERSEY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**SHIPP, District Judge**

This matter comes before the Court upon Rutgers, the State University of New Jersey, ("Rutgers") Richard L. McCormick, the Board of Trustees, and the Board of Governors of Rutgers' (collectively, "Defendants") Motion to Dismiss, or in the alternative, for Summary Judgment. (Defs.' Mot., ECF No. 16-1.) Larry Romsted and Manijeh Saba ("Plaintiffs") filed Opposition. (Pls.' Opp'n, ECF No. 20-1.) Defendants filed a Reply. (Defs.' Reply, ECF No. 24.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For good cause shown, Plaintiffs' Complaint is DISMISSED without prejudice.

## I.   Background

The instant matter arises from a November 4, 2010 fundraising event held by a Rutgers University student group. This group was previously known as Belief Awareness Knowledge Activism: Students United for Middle Eastern Justice ("BAKA")[1], and presently known as Students for Justice in Palestine ("SJP"). (Compl. ¶¶ 4-5, ECF No. 1; Defs.' Mot. 7.)   The event

---

[1] This Opinion will refer to the student organization as "BAKA" throughout.

was attended by 250 people and raised approximately $3,400. (Compl. ¶¶ 4, 22; Defs.' Mot. 10.) Plaintiffs are supporters of the US Boat to Gaza-NJ. (Compl. ¶ 4.) Plaintiffs allege that the funds raised for the event were designated for the US Boat to Gaza. (*Id.*) Defendants assert that prior to the event, a question was raised regarding whether the proposed beneficiary could be deemed to be unlawfully providing material assistance to a foreign terrorist organization. (Defs.' Mot. 1.) Specifically, Rutgers maintains that the initially proposed beneficiary, Stand for Justice, Inc. ("SFJ"), was not a "recognized, tax-exempt charitable entity" and was therefore ineligible to be a recipient of the funds raised. (*Id.* 8-10.) Therefore, BAKA advised the donors at the event that it had not yet determined a fundraising beneficiary, and if dissatisfied with the ultimate beneficiary, they would be entitled to a refund. (Compl. Ex. D.) Plaintiffs are donors dissatisfied with the chosen recipient. (Defs.' Mot. 2.)

After the event, Rutgers identified WESPAC Foundation ("WESPAC") as an alternative beneficiary. (Compl. ¶ 28.) Plaintiffs describe WESPAC as critical of the Israeli government and its policies, in particular the naval blockade of Gaza. (*Id.* ¶ 31.) However, Defendants assert that infirmities with regard to WESPAC's relationship to alleged illegal activities were eventually revealed. (Compl. ¶¶ 27-31; 60a-60h.) Additionally, while not necessary for resolution of Defendant's Motion to Dismiss, the Court notes that the Parties' submissions of undisputed material facts reflect that Rutgers mailed a check to WESPAC, but subsequently learned that WESPAC planned to engage in what Defendants identified as potentially unlawful activity. (Defs.' SUMF, ECF No. 16-2 ¶¶ 36-37.)  As a result, Rutgers issued a stop order on the check. (*Id.* ¶ 38.) Ultimately, America Near East Refugee Aid ("ANERA") was selected, and the donated funds of $3,050 were provided. (*Id.* ¶ 43.)

## II.   Analysis

### A.   Motion to Dismiss Standard

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal citation omitted). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### B.   Standing

As an initial matter, the Court must be satisfied that Article III standing has been properly established.  The Court must be assured that "plaintiffs have suffered an injury-in-fact sufficient

3

to support Article III standing" even where "the parties do not see that as much of a problem" and "barely touched on a stand-alone Article III standing argument." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762 (3d Cir. 2009).[2] "[S]tanding is a threshold question in every federal case." *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994) (internal citation omitted.) In order to establish Article III standing, a plaintiff must establish: (1) he is under threat of suffering injury-in-fact that is both "concrete and particularized" and "actual and imminent;" (2) the threat is fairly traceable to the challenged action of the defendant; and (3) it is likely that a favorable judicial decision will prevent or redress the injury. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal citations omitted).   These three elements constitute "the irreducible constitutional minimum" of Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Furthermore,

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. See *Ashwander v. TVA*, 297 U.S. 288, 345-348 (1936) (Brandeis, J., concurring) (offering the standing requirement as one means by which courts avoid unnecesry [sic] constitutional adjudications). Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of *Stare decisis. See, e.g., Baker v. Carr*, 369 U.S. 186, 204 (1962) (standing requirement aimed at "assur(ing) that concrete adverseness which sharpens the presentation of (the) issues upon which the court so largely depends"); *Holden v. Hardy*, 169 U.S. 366,

---

[2] Defendants allude to a standing challenge: "[w]hen correctly framed as a dispute between these Plaintiffs (donors at the fundraiser) and Rutgers, Plaintiffs' Complaint simply cannot state a claim" and "[e]ven if Rutgers restricted BAKA's free speech rights . . . Plaintiffs lack standing to assert this claim." (Defs.' Reply 2, 4-5.) Defendants, however, do not formally argue that Plaintiffs lack standing.

397 (1898) (assertion of third parties' rights would come with "greater cogency" from the third parties themselves). These two considerations underlie the Court's general rule: "Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."

*Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976).

After careful consideration, the Court finds that Plaintiffs have not established Article III standing.

### 1.    Injury-in-fact

An injury-in-fact is "an invasion of a legally protected interest" that is "concrete and particularized." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3d Cir. 2009) (internal citation omitted). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. 555, 560 n.1. In the present case, Plaintiffs made a refundable contribution to a student organization. Plaintiffs allege that Rutgers has a policy that fundraising by its student organizations must be for a lawful purpose—and that this policy constitutes a violation of the First and Fourteenth Amendments. (Compl. ¶¶ 9-11.) However, the policy being challenged did not regulate the actions of the individual Plaintiffs. Plaintiffs have failed to allege how a Rutgers policy designed to limit the actions of its student organizations constitutes a cognizable injury to them. Plaintiffs' requested relief is instructive in this regard.

In essence, Plaintiffs request that the Court order Rutgers to recoup the funds raised during the November 4, 2010 event from ANERA and provide the funds to WESPAC. Plaintiffs also seek an injunction. (Pls.' Opp'n 35.) Plaintiffs request that Defendants be enjoined from: (1) transferring or disposing of the proceeds; (2) future viewpoint discrimination against pro-Palestinian causes; and (3) other activities to deprive Plaintiffs of their liberties, or to retaliate against Plaintiffs. (*Id.*) Plaintiffs also seek an order that Defendants release the proceeds to WESPAC. (*Id.*) However, the money at issue, approximately $3,000 is not, and never was, the

5

the Plaintiffs' property. Similarly, the challenged Rutgers policy does not implicate the Plaintiffs presently before the Court.

Plaintiffs have not alleged a sufficiently personal injury-in-fact to satisfy Article III standing as their speech is not being regulated by the Defendants.

### 2.    Traceability

Plaintiffs have similarly failed to assert "sufficient facts to plausibly support a causal connection between the injury and the conduct complained of." *In re Schering Plough Corp.*, 678 F.3d 235, 247 (3d Cir. 2012) (internal citation omitted). "[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* While Plaintiffs challenge whether or not ANERA was freely chosen as the beneficiary, it is uncontested that BAKA ultimately chose to give the funds to ANERA. This indirectness of an alleged injury renders it substantially more difficult to meet the minimum requirement of Article III. *Allen v. Wright*, 468 U.S. 737, 758 (1984) (internal citation omitted).   In the present case, BAKA gave notice to the attendees of the fundraising event that the final recipient of the funds raised had not been selected and that if the individual donors objected to the selected recipient they could recoup their contribution. Ultimately, BAKA chose ANERA as the donation recipient.

Moreover the legal notice provided to the attendees of the fundraiser stated: "This letter is to notify the attendees . . . that the funds collected tonight will be held by Rutgers University until the legal issues and status surrounding the beneficiary are resolved. You may opt for a refund if there is an alternative [recipient] chosen by BAKA and this is not your preference." (Compl., Ex. D.) The voluntarily made donations merely implemented the Plaintiffs' choice to donate to an entity selected by BAKA. Thus, any injury that Plaintiffs incurred is "self-inflicted

harm" not fairly traceable to Defendants. *Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169, 177 (D.C. Cir. 2012).

### 3.   Redressability

A Plaintiff only has Article III standing if "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 181 (2000) (holding that civil penalties and resulting deterrent effect supported a showing of redressability.)  For the reasons discussed above, "[w]hether the [plaintiff's] claim[ed] . . . injury would be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989). Accordingly, Plaintiffs have failed to demonstrate Article III standing.

### C.   Prudential Standing

Plaintiffs appear to implicitly assert the rights of third parties. "However, the federal courts adhere to a prudential rule that ordinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." *The Pitt News v. Fisher*, 215 F.3d 354, 361-62 (3d Cir. 2000) (internal quotation omitted).  This rule seeks to "limit access to the federal courts to those litigants best suited to assert a particular claim." *Id.* at 362. (internal citation omitted). An exception to this rule requires that "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id.* (internal citation omitted.) Plaintiffs have not pled such an impediment. Furthermore, the First Amendment rights asserted here do not require relaxation of this criterion.

In this regard, the Court finds *The Pitt News* instructive. *The Pitt News* involved an allegation that a Pennsylvania statute precluding advertising of alcohol in a student run

newspaper was injurious to the plaintiff newspaper's First Amendment rights by reducing funding generated from advertisement dollars, and injurious to the advertisers by abridging their First Amendment rights. *The Pitt News* court concluded, "the third parties in question have . . . not suffered substantial abridgment of their free speech rights." *Id.* at 365. In reaching this conclusion, the court found that the speech had been channeled through non-student publications and that the effect on third-parties was minimal. *Id.* Similarly here, the legal notice provided for the contributors' speech to be re-channeled through independent donations after recouping a refund. Additionally, the student organization itself exercised its freedom of speech rights by way of donation to a different entity. Accordingly, the prudential standing rule acts to prohibit third-party standing in the instant action.

###   D.      Failure to State a Claim

###   Rutgers has Not Restricted Plaintiffs' Speech[3]

Defendants assert that there has been no restriction on Plaintiffs' speech. (Defs.' Mot. 18.) Specifically, Defendants argue that BAKA raised the funds and elected to donate said funds to the selected beneficiary. (Defs.' Mot. 18.) Plaintiffs argue that the donations were political spending, which are "at the core of [our] First Amendment freedoms." (Pls.' Opp'n 16) (internal citation omitted.) Plaintiffs allege that Defendants' standard of allowing funds only to be distributed for "lawful purposes" was overbroad. (Pls.' Opp'n 19.) To this end, Plaintiffs allege that the Defendants engaged in viewpoint discrimination by holding the funds. (*Id.*) Defendants argue this is not a restriction on Plaintiffs' speech, but, at best, an allegation of restriction on BAKA's speech. (Defs.' Reply 4-5.)

---

[3] Similarly, Plaintiffs have not pled sufficient facts to meet the standards of Rule 12(b)(6) as it relates to the individual defendants. Specifically, the Complaint does not set forth a claim for relief as against the individual defendants.

Plaintiffs have failed to identify a restriction on their speech. For purposes of clarity, Plaintiff Romsted is a professor at Rutgers and a political activist. (Compl. ¶¶ 2, 15.) Plaintiff Saba is an activist for women's rights, human rights and constitutional rights who "regularly engages in political activities in support of the Palestinian people." (Compl. ¶¶ 3, 16.)  It is undisputed that at the time their donations were made to BAKA, the individuals attending the event were put on notice that a beneficiary had yet to be determined and that the donations would be held.  (Compl. ¶ 26.) Plaintiffs fail to state a claim as to how the agreed upon holding of the funds until a beneficiary is determined constitutes a restriction on speech.

## III.    Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Plaintiffs' Complaint is dismissed without prejudice.  An Order consistent with this Opinion will be entered.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2013

9